1    Todd E. Kennedy, Bar No. 6014
     tkennedy@lionelsawyer.com
2    Ketan D. Bhirud, Bar No. 10515
     kbhirud@lionelsawyer.com
3    LIONEL SAWYER & COLLINS
     1700 Bank of America Plaza
4    300 South Fourth Street
     Las Vegas, Nevada 89101
5    Telephone: (702) 383-8888
     Facsimile: (702) 383-8845
6
7    Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF NEVADA

10   RES-NV CHLV, LLC, a Florida limited       Case No.: 2:11-cv-00593-PMP -CWH
     liability company;
11
                    Plaintiff,
12
     v.                                        APPLICATION FOR DEFAULT
                                               JUDGMENT AGAINST HARRY H.
13   HARRY H. SHULL, an individual;            SHULL

14                  Defendant.

15
     I, Michael Strickland, declare that:
16
17        1.      I am an asset manager with Rialto Capital Advisors, LLC ("Rialto").  Rialto is the

18   attorney in fact for RL RES 2009-1 Investments, LLC (the "Manager").  The Manager is the

19   manager of Multibank 2009-1 RES-ADC Venture, LLC ("Multibank").  Multibank is the sole

20   member of Plaintiff.  By virtue of the power of attorney, Rialto Capital Advisors, LLC has the

21   authority to perform certain servicing functions for Plaintiff, including, but not limited to, filing

22   and prosecuting lawsuits on behalf of Plaintiff.

          2.      As a result of my employment responsibilities and my performance thereof, I
23
     have knowledge of the facts set forth herein which are known by me to be true and correct.  I am
24
     competent to testify if called as a witness.
25
          3.      In my capacity as Asset Manager, I am responsible for managing and seeking
26
     recovery on the loan from which this lawsuit arose.
27
          4.      Likewise, in my capacity as Asset Manager, I have access to, and I am familiar
28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    with, the books and records kept by Plaintiff which concern the loan documents in this matter.

2    To the extent that they predate Plaintiff's acquisition of the lender's rights in connection with the

3    Loan, I am informed and believe that those books and records were generated, recorded and/or

4    complied by Plaintiff's predecessors in interest, namely Silver State Bank and/or the Federal

5    Deposit Insurance Corporation (the "FDIC") as Receiver for Silver State Bank.   In connection

6    with Plaintiff's acquisition of the lender's rights, these books and records were provided by the

7    FDIC or its agents and representatives to Rialto, and have been maintained in the ordinary course

8    of business by or on behalf of Rialto and/or Plaintiff since that time.   To the extent the relevant

9    books and records concern Plaintiff's acquisition or exercise of the lender's rights, they have been

10   generated and maintained by Plaintiff and/or its representatives in the ordinary course of

11   business.   It is the standard operating procedure of Rialto (and Plaintiff) to preserve all such

12   documents in a place of safe keeping, that has in fact been done, and I have personal access to

13   and the power to exercise control over these books and records.

14       5.      In September of 2008, Silver State Bank was closed by the Nevada Financial

15   Institutions Division and the FDIC was appointed as its receiver.   Defendant's obligations under

16   the Loan[1] were then owed to the FDIC as the receiver for Silver State Bank.

17       6.      Thereafter, Multibank acquired the Loan from the FDIC and became entitled to

18   enforce all rights of the lender under the Loan Documents.

19       7.      Multibank then assigned the Loan and all related Loan Documents to Plaintiff.

20       8.      True and correct copies of the following documents, which Plaintiff received from

21   the FDIC, are attached hereto as indicated:

22       a)    Credit Loan Agreement, attached hereto as **Exhibit 2-A**.
         b)    Note, attached hereto as **Exhibit 2-B**.
23       c)    Deed of Trust, attached hereto as **Exhibit 2-C**.
         d)    Amendment to Note, attached hereto as **Exhibit 2-D**.
24

25       9.      A true and correct copy of the Trustee's Deed Upon Sale relating to the Security is

26   attached hereto as **Exhibit 2-E**.

27   _____

28   [1] Capitalized terms in this declaration shall have the same meaning as those terms in
     Plaintiff's Application for Default Judgment.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2

10. True and correct copies of the documents assigning the Loan to Multibank are attached hereto as **Exhibit 2-F**. These copies were obtained from the originals, which Plaintiff has in its business records.

11. True and correct copies of the documents assigning the Loan to Plaintiff are attached hereto as **Exhibit 2-G**. These copies were obtained from the originals, which Plaintiff has in its business records.

12. Defendant has failed to honor his obligations under the Loan Documents, as he has failed to repay the Loan.

13. As of December 22, 2011, Defendant owed a total of $635,092.15 under the Loan Documents, which represents the principal, interest and late charges due and owing.

14. After offsetting the amount due and owing by $190,000 (the amount for which the Security was sold), Plaintiff is entitled to a deficiency judgment in the amount of $445,092.15.

15. Upon information and belief, Defendant is neither a minor nor incompetent person within the meaning of Federal Rule of Civil Procedure 55.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 22, 2011

_____
Michael Strickland

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

1    Todd E. Kennedy, Bar No. 6014
     tkennedy@lionelsawyer.com
2    Ketan D. Bhirud, Bar No. 10515
     kbhirud@lionelsawyer.com
3    LIONEL SAWYER & COLLINS
     1700 Bank of America Plaza
4    300 South Fourth Street
     Las Vegas, Nevada 89101
5    Telephone: (702) 383-8888
     Facsimile: (702) 383-8845
6
7    *Attorneys for Plaintiff*

8              UNITED STATES DISTRICT COURT

9              DISTRICT OF NEVADA

10   RES-NV CHLV, LLC, a Florida limited          Case No.: 2:11-cv-00593-PMP -CWH
     liability company;

11                     Plaintiff,                 **APPLICATION FOR DEFAULT
                                                  JUDGMENT AGAINST CELEBRATE
12   v.                                           PROPERTIES, LLC; STEVEN R.
                                                  ROSENBERG; AND HARRY H. SHULL**
13   HARRY H. SHULL, an individual;

14                     Defendant.

15        Pursuant to Federal Rules of Civil Procedure 7(b) and 55(a) and Local Rule 77-1(b)(2),

16   Plaintiff moves the Court to first affirmatively determine its subject matter jurisdiction of this

17   action and then enter default judgment against Defendant Harry H. Shull ("Defendant") in the

18   amount of $453,251.94, together with interest accruing at the statutory rate from the date of entry

19   of the Default Judgment until paid in full.  This figure consists of $445,092.15 in actual damages,

20   $6,266.73 in attorneys' fees, and $1,893.06 in costs.

21        This Application is made on the grounds that default has been entered against Defendant

22   on October 12, 2011, a copy of which is attached as **Exhibit 1**.  In support of this Application,

23   Plaintiff relies on the Declaration of Michael Strickland, attached as **Exhibit 2**, the Declaration

24   of Todd Kennedy attached **Exhibit 3**, and all papers and pleadings on file.

25   . . .

26   . . .

27   . . .

28   . . .

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    FACTS

3

#### A.    Silver State Bank Loans Money to Defendant and Defendant Pledges Security for that Loan

4

5   Pursuant to a Revolving Line of Credit Loan Agreement dated August 17, 2006 (the

6   "Credit Loan Agreement"), Silver State Bank extended a revolving line of credit to Defendant in

7   the aggregate amount of $2,107,600.[1]  Pursuant to the Credit Loan Agreement, Silver State Bank

8   and Defendant entered into a Revolving Line of Credit Promissory Note Secured by Deed of

9   Trust dated August 17, 2006 (the "Note"), whereby Silver State Bank extended a loan to

10   Defendant in the original principal amount of $2,107,600 (the "Loan").[2]  Pursuant to the Note,

11   Defendant agreed to repay the Loan by making monthly payments until the maturity date of

12   February 24, 2008, at which time the remaining principal and all accrued unpaid interest would

13   become due.[3]

14   Pursuant to a Deed of Trust and Security Agreement and Fixture Filing with Assignment

15   of Rents dated August 17, 2006 and recorded with the Clark County Recorder's Office on or

16   about August 24, 2006 as Instrument No. 0000820 in Book No. 20060824 (the "Deed of Trust"),

17   Defendant pledged real property described in the Deed of Trust (the "Property"), and all fixtures

18   and improvements thereon, as security for the Loan (the "Security").[4]

19   Pursuant to an Amendment to Revolving Line of Credit Promissory Note Secured by

20   Deed of Trust dated March 24, 2008 (the "Amendment to Note"), Silver State Bank agreed to

21   extend the maturity date of the Loan to August 24, 2008.[5]

22   #### B.    Defendant Fails to Repay the Loan and a Sale of the Security Occurs

23   Defendant has failed to honor his obligations under the Credit Loan Agreement, the Note,

24

25   [1] *See* Credit Loan Agreement, attached hereto as **Exhibit 2-A**.

26   [2] *See* Note, attached hereto as **Exhibit 2-B**.

[3] *See id.*

27   [4] *See* Deed of Trust, attached hereto as **Exhibit 2-C**.

28   [5] *See* Amendment to Note, attached hereto as **Exhibit 2-D**.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2

the Deed of Trust and the Amendment to Note (collectively, the "Loan Documents"), as he has failed to repay the Loan.[6]  As a result of this default, a trustee's sale of the Security was properly scheduled, noticed and held on December 1, 2010 pursuant to the Deed of Trust, where it was purchased by Plaintiff for $190,000 via a credit bid.[7]

      **C.**      **Plaintiff Is Transferred the Loan from Silver State Bank Through the FDIC**

In September of 2008, Silver State Bank was closed by the Nevada Financial Institutions Division and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as its receiver.  Defendant's obligations under the Loan were then owed to the FDIC as the receiver for Silver State Bank.  In February of 2010, the FDIC formed Multibank 2009-1 RES-ADC Venture, LLC ("Multibank"), transferred the Loan to that entity, and then sold a 40% interest in Multibank to a private investor (who would serve as that entities manager).[8]   In November of 2010, Multibank assigned the Loan and all related loan documents to Plaintiff, a limited liability company wholly owned by Multibank.[9]

## II.      LEGAL ARGUMENT REGARDING SUBJECT MATTER JURISDICTION

      **A.**      **Plaintiff Requests That the Court Determine Its Subject Matter Jurisdiction**

Plaintiff requests the Court first affirmatively determine its subject matter jurisdiction of this action because two judges of this Court have entered orders in other actions similar to this one dismissing the actions for lack of subject matter jurisdiction.[10]   Reconsideration motions have been filed in both actions arguing the dismissal orders are based upon fundamental misapprehensions of law and fact, upon the grounds and for the reasons set forth below, and the Court does in fact ***have*** subject matter jurisdiction of these actions.

---

[6] *See* Declaration of Michael Strickland ("Strickland Dec."), attached hereto as **Exhibit 2**.

[7] *See* Trustee's Deed Upon Sale, attached hereto as **Exhibit 2-E**.

[8] *See* Documents assigning the Loan to Multibank 2009-1 RES-ADC Venture, LLC, attached hereto as **Exhibit 2-F**.

[9] *See* Documents assigning the Loan to Plaintiff, attached hereto as **Exhibit 2-G**.

[10] *See* RES-NV TVL, LLC v. Towne Vistas, LLC et. al., 2:10-CV-1084 JCM (PAL), Dkt # 71; *RES-NV APC, LLC v. Astoria Pearl Creel, LLC et. al.*, 2-11-CV-00381 LDG (RJJ), Dkt. #32.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

**B.    The Court Has Subject Matter Jurisdiction Based on Diversity**

Plaintiff is a limited liability company ("LLC").   In *Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006), the Ninth Circuit first ruled that "an unincorporated association such as a partnership has the citizenships of all its members, " citing *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990), while "a corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated," citing 28 U.S.C. 1332 (c)(1).   In *Johnson,* the Ninth Circuit then noted that every circuit that had addressed the question at that time treated LLC's "like partnerships for the purpose of diversity jurisdiction," before joining its "sister circuits" by holding "that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens." *Johnson,* 437 F.3d at 899.

Plaintiff's owners/members hierarchy is as follows:

1.    Plaintiff is, and at all times relevant herein was, a Florida limited liability company which is wholly owned by its sole member Multibank 2009-1 RES-ADC Venture, LLC.

2.    Multibank 2009-1 RES-ADC Venture, LLC is, and at all times relevant herein was, a Delaware limited liability company comprised of two members for purposes of diversity jurisdiction: (1) RL RES 2009-1 Investments, LLC; and (2) the Federal Deposit Insurance Corporation.

    a.  RL RES 2009-1 Investments, LLC is a Delaware limited liability company comprised of only one member: RL RES 2009-1, LLC.

        i.    RL RES 2009-1, LLC is a Delaware limited liability company comprised of two members: (1) Rialto RL RES 2009-1, LLC; and (2) Lennar Distressed Investments, LLC.

            a.  Rialto RL RES 2009-1, LLC is a Delaware limited liability company comprised of only one member: Rialto Capital Holdings, LLC.

                i.    Rialto Capital Holdings, LLC is a Delaware limited liability company comprised of only one member: Rialto Capital Management, LLC.

                    1.    Rialto Capital Management, LLC is a Delaware limited liability company comprised of only one member: Jeffrey Krasnoff.

                        a.  Jeffrey Krasnoff is an individual residing in the state of Florida.

            b.  Lennar Distressed Investments, LLC is a Delaware limited liability company comprised of only one member: Lennar Corporation.

                i.    Lennar Corporation is a Delaware corporation with its principal place of business in Florida.

    b.  The Federal Deposit Insurance Corporation is a federally chartered corporation with its principal place of business in Washington, D.C.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

4

1    Thus, applying *Johnson* at every level of Plaintiff's hierarchy results in Plaintiff being a

2    citizen of the states of Delaware and Florida except, arguably, that the FDIC is a federally

3    chartered corporation with its principal place of business in the District of Columbia.[11]

4    In *Hancock Financial Corp. v. Federal Sav. and Loan Ins. Co.*, 492, F.2d 1325, 1329 (9th

5    Cir. 1974), the Ninth Circuit held that a federally chartered corporation "is not a citizen of any

6    particular state for diversity purposes." *Id.* *Hancock*, in turn, relies on the reasoning in *Federal*

7    *Deposit Ins. Corp. ("FDIC") v. National Surety Corp.*, 345 F.Supp 885 (S.D. Iowa 1972) where

8    the court recognized there was "some merit" to the argument that the FDIC was a citizen of the

9    District of Columbia—treated as a state under 28 U.S.C. §1332(e)—because of its principal

10   place of business being located there, *National Surety* at 887, but rejected that conclusion as

11   inconsistent with the ***then-existing*** Congressional intent to limit federal court jurisdiction as

12   reflected in statutes limiting federal question jurisdiction for federally-chartered corporations.

13   *See Hancock*, 492 F.2d at 1329, (quoting *National Surety*, 345 F.Supp. at 888).

14   However, since *Hancock* and *National Surety*, Congressional intent regarding the FDIC

15   and federal courts has completely reversed itself with the enactment of the Financial Institutions

16   Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), giving the FDIC ***in any capacity***

17   the choice to invoke federal question jurisdiction for actions such as this one. *See, e.g. Kirkbride*

18   *v. Continental Cas. Co.*, 933 F.2d 729, 731-32 (9th Cir. 1991) (FIRREA evidences Congressional

19   "desire that cases involving FDIC should generally be heard and decided by the federal courts.").

20   Furthermore, the Supreme Court has quite recently reconfirmed the importance of a corporation's

21   state of incorporation and principal place of business in jurisdictional determinations. *See*

22   *Goodyear Dunlop Tires Operations v. Brown*, __ U.S. ___, 131 S.Ct. 2846, 2853-54 (2011).

23   Thus, Congressional and judicial developments since *Hancock* completely undermine its

24

25

---

26   [11] The Complaint details the ownership structure of Plaintiff but mistakenly identifies the FDIC as being incorporated in Delaware. Notwithstanding the FDIC's partial ownership of an
27   LLC which, in turn, owns the Plaintiff, all persons or entities in the Plaintiff's ownership structure other than the FDIC are diverse from Defendants and there is no question that the FDIC
28   is ***not*** a citizen of the same state as any of the Defendants.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5

1   statement that federally-chartered corporations have no state citizenship for diversity purposes

2   insofar as the FDIC is concerned given its principal place of business in Washington, D.C.

3        Additionally, under *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899

4   (9th Cir. 2006), plaintiff is a citizen of Florida and Delaware, by virtue of the membership

5   structure of the private party member of plaintiff's parent LLC.   As discussed above, subsequent

6   Congressional and judicial developments have completely undermined the Ninth Circuit's basis

7   for *Hancock's* statement that federally-chartered corporations have no state citizenship with

8   respect to the FDIC, but even if it remained true today, it would ***not*** defeat diversity jurisdiction

9   here.  Plaintiff simply ***cannot*** be a citizen of Florida and Delaware and of "no particular state" at

10  the same time.  Complete diversity requires that each ***party*** be diverse from all other adverse

11  ***parties***; it does ***not*** require that one choosing to invoke diversity jurisdiction negate the existence

12  of a ***nonparty*** in a party's hierarchy whose presence in the action would destroy diversity to

13  satisfy the complete diversity requirement.  *See Lincoln Property Co. v. Roche*, 546 U.S. 81

14  (2005).  Moreover, even a "stateless" party need not always defeat diversity jurisdiction; in

15  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), the Supreme Court upheld the

16  authority of federal district and appellate courts to ***dismiss*** a dispensable "stateless" party to

17  preserve diversity jurisdiction.  If federal courts can dismiss a dispensable "stateless" party, then

18  the Court certainly can disregard—or treat as nominal—an allegedly stateless ***nonparty***, at least

19  so long as doing so does not deprive the plaintiff LLC of all state citizenships.  *See e.g. FDIC v.*

20  *Linquist & Vennum*, 702 F.Supp 749, 750-51 (D. Minn. 1989) (FDIC's citizenship could be

21  ignored for diversity jurisdiction purposes).

22        The Court's decisions dismissing actions such as this one for lack of subject matter

23  jurisdiction rely on *Hancock's* statement that a federally-chartered corporation "is not a citizen of

24  any particular state for diversity purposes." 492 F.2d at 1329.  However, that statement is no

25  longer authoritative for the FDIC, given the complete reversal of Congressional intent regarding

26  the FDIC and federal courts and the FDIC's principal place of business in Washington D.C.

27  Moreover, since plaintiff is a citizen of Florida and Delaware, the allegedly "stateless" status of

28  the FDIC—a nonparty to this action—need not defeat diversity jurisdiction under Ninth Circuit

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

6

1    law.

          1.    **Permitting Plaintiff to Invoke Diversity Jurisdiction Based on the FDIC's Principle Place of Business No Longer Conflicts with Current Congressional and Judicial Intent Regarding Federal Court Jurisdiction of Matters Involving the FDIC**

          As noted, in *Hancock*, the Ninth Circuit relied on the reasoning in *National Surety* in rejecting the decisions recognizing that, as a federally chartered corporation, the FDIC is a citizen of the District of Columbia, the locus of its principal place of business, for diversity purposes. However, in *National Surety*, the court found "some merit to the argument that the FDIC has a principal place of business in Washington, D.C. and could be considered a citizen of the District of Columbia under Title 28 U.S.C. Section 1332(c) which provides that " . . . a corporation shall be deemed a citizen of any State by which it has been incorporated and of the state where it has *principal* place of business) (Emphasis added.)," 345 F.Supp. at 887, but rejected that conclusion with the following observations (*quoted in Hancock*, 492 F.2d at 1329):

> If federal corporations whose principal place of business is located in the District of Columbia were to be considered citizens of that District, diversity jurisdiction would be expanded to almost all suits involving federally chartered corporations. This would be a result not intended by Congress. Before 1948 all suits by or against any federally chartered corporation were deemed to involve a federal question. In 1948 *Title 28 U.S.C., Section 1349* was passed by Congress providing that a federal question is involved only in suits where over one-half of the stock of the federal corporation is owned by the United States. This Congressional attempt to limit federal court jurisdiction would be nullified by defendant's interpretation of diversity jurisdiction which would give federal jurisdiction to almost all suits involving federally chartered corporations.

*Id.* at 1329 (quoting *National Surety*, 345 F.Supp. at 888). In *National Surety*, the court continued: "Without clearer authority, this court declines to expand its jurisdiction into this new area." 345 F.Supp. at 888.

          Since *Hancock* and *National Surety*, however, Congress has completely reversed course once again with respect to the FDIC, enacting the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), allowing the FDIC "[t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal" and

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

7

1   providing that *"all suits of a civil nature* at common law or in equity to which the [FDIC] *in any*

2   *capacity, is a party* shall be deemed to arise under the laws of the United States." *See* 12 USC

3   § 1819(a) and (b)(2)(A) (emphasis added).   Courts have widely respected this mandate and

4   recognized Congress' desire that cases involving the FDIC be able to be heard and decided by the

5   federal courts.  *See, e.g. FDIC v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991) (allowing federal

6   jurisdiction even when the FDIC has been voluntarily dismissed as a party), *cert. denied*, 502

7   U.S. 1092 (1992).

8        The Ninth Circuit echoed this view of the breadth of the FDIC's place in federal court.  In

9   *Kirkbride v. Cont'l Casualty Co.*, 933 F.2d 729, 731 (9th Cir 1991) the Ninth Circuit stated: "We

10   reaffirm that the grant of subject mater jurisdiction contained in FDIC's removal statute

11   evidences Congress' desire that cases involving FDIC should generally be heard and decided by

12   the federal courts") (citations omitted).  *In Matter of Meyerland Co.*, the court stated:

13        The power conferred by FIRREA to invoke federal jurisdiction
     and to remove from state court is substantial … Access to federal
14        courts in all actions to which it is a party allows the FDIC to
     develop and rely on a national and uniform body of law,
15        consistent with eliminating the problems identified by Congress in
     having less rigorous state standards coexisting with federal ones.
16

17   960 F.2d 512, 515 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 967 (Jan. 11, 1993).  Indeed, this grant

18   of jurisdiction is so strong that courts have held that even "the transfer of assets by FDIC to a

19   private third party does not divest the court of subject matter jurisdiction under Section 1819"

20   and that federal courts continue to have original jurisdiction even after the FDIC has been

21   dismissed.  *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100-01 (2d Cir. 1999).  *Accord.*

22   *FDIC v. Griffin, supra; see also, Destfino v. Reiswig*, 630 F.3d 952 , 958 (9th Cir. 2011) (at least

23   federal supplemental jurisdiction remains after FDIC dismissal); *New Rock Asset Partners LP v.*

24   *Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1494-95 (3d Cir. 1996) (same).

25        Finally, the complete reversal of Congressional intent regarding the FDIC and federal

26   courts is not the only relevant change in viewpoints.   Quite recently the Supreme Court

27   significantly altered its viewpoint regarding the importance of where a corporation is "at home,"

28   referencing domicile, state of incorporation, and principal placed of business, in holding that

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

8

general jurisdiction for actions against a corporation could not be based on continuous activity in a state unrelated to the claim alleged that did not reflect the corporation being "at home" in that state. See *Goodyear Dunlop Tires Operation v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2853-54, 2857 (2011). Obviously, the issue here is different, but the Supreme Court's noticeable shift from a "minimum contacts" approach to one focusing on where a party is "at home," referencing state of incorporation and principal place of business for corporations, provides added support for recognizing that the language in *Hancock* is no longer authoritative with respect to the FDIC.

*Hancock* involved the Federal Savings and Loan Insurance Corporation, *not* the FDIC. Thus, this Court is not bound by *Hancock's* statements regarding federally-chartered corporations not being a citizen of any particular state for diversity purposes with respect to the FDIC, given the complete reversal of Congressional intent regarding the FDIC with the enactment of FIRREA, and the District of Columbia being the location of the FDIC's principal place of business, given the Supreme Court's quite recent emphasis on a corporation's state of incorporation and principal place of business for jurisdictional determinations.

## 2. The FDIC's Allegedly "Stateless" Status Does Not Defeat Complete Diversity Here Because Plaintiff Is an LLC That Is a Citizen of Florida and Delaware and The FDIC Is Not a Party to This Action

In *Hancock*, *National Surety* and the other cases rejecting diversity jurisdiction based on a federally chartered corporation's allegedly "stateless" status, the federally-chartered corporation was a party to the action. 28 U.S.C. §1332 requires, in relevant part, an action "between . . . citizens of different states" for diversity jurisdiction, and the statutory complete diversity requirement, *i.e.* that every party must be diverse from every other adverse party, means that an action with a "stateless" FDIC as a party would not be between "citizens of different states." Here, however, the FDIC is *not* a party to this action; its sole relationship to the issue now before the Court is that it is one of *two* members of the LLC that is the sole member of plaintiff. In *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), the Ninth Circuit held that "an LLC is a citizen of every state of which its owners/members are citizens." *Id.* Thus, even if the FDIC is "stateless," plaintiff is *not* "stateless," because plaintiff is a citizen of Florida and Delaware, based on the citizenship of the private-party member of its "parent"

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

9

1    LLC, as determined under *Johnson*.

2          Nevertheless, one of the adverse decisions asserts that the FDIC's "stateless" status

3    defeats complete diversity here even though the FDIC is **not** a party to this action, citing *Swiger*

4    *v. Allegheny Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008) and *ISI International, Inc. v. Borden*

5    *Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003).  Obviously, *Swiger* and *ISI International*

6    are **not** the law of this circuit, and **neither** case involved an LLC, giving rise to at least two

7    critical distinctions that, if the holdings of those two cases were to be applied to LLC's, would be

8    inconsistent with the law of this circuit regarding LLC's as established in *Johnson*.  Specifically,

9    *Swiger* and *ISI International* both involve partnerships—**not** LLC's—with "stateless" individuals

10   who were United States citizens but domiciled **outside** the United States, **not** a federally-

11   chartered corporation that has its principal place of business in the District of Columbia.[12]

12         In *Swiger*, the Third Circuit rejected the argument that a partnership with both "stateless"

13   partners and partners with state citizenship was a citizen of the latter states, asserting that a

14   partnership is not a "citizen" at all and thus the partnership was "not an American citizen" and

15   had "no domicile in any state."  *Id*, 540 F.3d at 181-82.  While that may be true for partnerships

16   under *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990); *but see, Schnabel v. Lui*, 302

17   F.3d 1023, 1030 n.3 (9th Cir. 2002) ("… a partnership is a citizen of every state of which its

18   partners are citizens,"  citing *Carden*), the Supreme Court has yet to address the question with

19   respect to a LLC, and the Ninth Circuit's decision in *Johnson* reflects a significantly **different**

20   reading of *Carden*, at least insofar as it might apply to LLC's.  In *Johnson*, the Ninth Circuit read

21   *Carden* as "treating a limited partnership as having the citizenship of all its members" and then

22   went on to "join our sister circuits and hold that, like a partnership, an LLC is a citizen of every

23   state of which its owners/members are citizens."  *Johnson*, 437 F.3d at 899.

24         The differences between partnerships and LLC's are real and substantial and amply

25   _____

26   [12] The sole relevance of *ISI International* to the issue here consists of a single sentence
     parenthetical in the Seventh Circuit's opinion that identifies these distinctions but otherwise
     provides no rationale for its conclusion.  *See Id.*, 16 F.3d at 733 ("One of Scott & Aylen's

27   partners is a U.S. citizen domiciled in Canada; she has no state citizenship, so the diversity
     jurisdiction is unavailable.").  Consequently, plaintiff will focus its discussion of the issue here
     on the Third Circuit's opinion in *Swiger*.

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

10

1    justify the Ninth Circuit's decision in *Johnson* to treat LLC's like partnerships insofar as

2    determining *diversity* jurisdiction is concerned while holding that an LLC is a citizen of *every*

3    state of which its owners/members are citizens despite *Swiger* and other decisions from other

4    circuits asserting that partnerships are not citizens at all and thus cannot be citizens of any state

5    for diversity jurisdiction purposes.   *See* Debra R. Cohen, *Limited Liability Company*

6    *Citizenships: Reconsidering An Illogical and Inconsistent Choice*, 90 Marquette L. Rev. 269

7    (2006).  As this Court has expressed it:

8            An LLC is a relatively new hybrid business entity that has the
             characteristics of both a corporation and a partnership, but is not
9            characterized as either.   While LLCs offer members the same
             protection from personal liability as corporations offer their
10           shareholders, unless otherwise indicated, LLCs are generally
             treated as partnerships for tax purposes.  One commentator has
11           stated that an LLC borrows from a partnership the characteristics
             of informal operation, internal governance by contract, direct
12           participation by members, and no taxation at the entity level.  From
             a corporation, an LLC borrows the characteristics of member
13           protection from personal liability, the requirement that organizers
             file articles of organization with the secretary of state, a corporate
14           form of governance if the LLC elects to be governed by managers,
             and an operating agreement analogous to corporate bylaws.  An
15           LLC has an existence separate from its members and managers.

16   *Montgomery v. eTrepped Technologies, LLC*, 548 F. Supp. 2d 1175, 1179 (D. Nev. 2008)

17   (recognizing that federal and state courts have consistently applied the law of corporations to

18   LLCs for piercing the corporate veil, the "alter ego" doctrine, the "business judgment rule," and

19   derivative actions, while treating LLC's, partnerships and limited partnerships as corporations for

20   the attorney-client privilege); see also, *In re Giampietro*, 317 B.R. 841, 845-47 (D. Nev 2004)

21   (treating an LLC as a corporation for the "alter ego" doctrine).  Moreover, partnerships require at

22   least two members, while LLC's can be formed with only one member, and like corporate

23   shareholders, LLC members are not subject to personal liability, while general partners have

24   personal liability and each partner, not the partnerships, is personally liable for the debts of the

25   partnerships.  Compare NRS Chapters 78, 86, and 87.

26           Thus, insofar as *Johnson* treats LLC's like partnerships for determining citizenship but

27   then *differs* from the treatment of partnerships in cases like *Swiger* in other circuits by holding

28   that LLC's *have* state citizenship(s), the difference in treatment is amply justified by the hybrid

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

11

1    nature of LLC's, making them like partnerships in *some* ways, but ***unlike*** partnerships in that

2    "[a]n LLC has an existence separate from its members and managers."[13]   *Montgomery*, 548 F.

3    Supp. at 1179.

4         This distinction between LLC's, which have state citizenship(s) under *Johnson*, and

5    partnerships, which—at least under *Carden, Swiger,* and *ISI International*—are ***not*** citizens at all

6    and thus ***cannot*** have state citizenships, may not be significant in many (if not most) cases

7    since—as recognized in *Johnson*—diversity jurisdiction is determined in the same way for both.

8    However, this distinction is critical in cases like this one, where the allegedly "stateless" entity is

9    ***not*** an individual United States citizen domiciled ***outside*** the United States, but a federally-

10   chartered corporation with its principal place of business in the District of Columbia.  In *Lincoln*

11   *Property Co. v. Roche*, 546 U.S. 81 (2005), the Supreme Court first reaffirmed that partnerships

12   are not "citizens" at all under *Carden*, 546 U.S. 84, n.1, but then held that where a party to the

13   action ***has*** state citizenship(s) based on its state of incorporation and principal place of business,

14   one need ***not*** negate the existence of ***nonparties*** (including partners) in the party's hierarchy

15   whose presence in the action would defeat diversity jurisdiction to satisfy the complete diversity

16   requirement.  546 U.S. at 88-90, 93-94.  Here, Plaintiff is a citizen of Florida and Delaware, and

17   the FDIC is a federally-chartered corporation with its principal place of business in the District

18   of Columbia, but the FDIC is ***not*** a party to this action.

19

20        [13] Notably, the Fourth, Sixth, Tenth and Eleventh Circuits, without much discussion, have
21   applied the corporate entity approach of §1332(c) to determine the citizenship of an LLC. In
     explaining the invocation of diversity, the Tenth Circuit for example indicated after citing
22   §1332(c), "[i]t is undisputed that Shell is a Delaware limited liability corporation (LLC) and its
     principal place of business is Houston, Texas. Thus, Shell is a citizen of both Delaware and
23   Texas.'" *Shell Rocky Mountain Production, LLC v.Ultra Resources, Inc.*, 415 F.3d 1158, 1162
     (10th Cir. 2005). *See also Kalamazoo Acquisitions, LLC v. Westfield Insurance Co.*, 395 F.3d
24   338, 341, n.5 (6ᵗʰ Cir. 2005) (invoking diversity jurisdiction after considering the plaintiff LLC's
     principal place of business); *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1237 (11th Cir.
25   2005); *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1280 (11th Cir. 2006); and
     *Strong Pharm. Lab., LLC v. Trademark Cosmetics, Inc.*, No. RDB 05-3427, 2006 WL 2033138,
26   at *1 (D. Md. July 17, 2006). Additionally, the issue remains undecided in at least the First and
     Fifth Circuits and neither the Third Circuit nor the D.C. Circuit has addressed the issue. And last,
27   but certainly not least, the Supreme Court has not yet voiced an opinion on how to determine the
     citizenship of an LLC for purposes of diversity jurisdiction. *See Pramco, LLC v. San Juan Bay*
28   *Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) ("Neither the Supreme Court nor this circuit has yet
     directly addressed whether that rule also applies to limited liability companies.")

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

12

1       Moreover, in *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 86 (1989), the Supreme

2   Court reaffirmed the authority of federal district and appellate courts to **dismiss** a dispensable

3   "stateless" party to preserve diversity jurisdiction. *See, also, Inecon Agricorporation v. Tribal*

4   *Farms, Inc.*, 656 F.2d 498, 500 (9th Cir. 1981) (affirming dismissal of two individuals sued in

5   their official capacities as members of the Fort Mojave Tribal Council to preserve diversity). If

6   the Court can dismiss a dispensable "stateless" **party** to preserve diversity jurisdiction, then the

7   Court certainly can disregard—or treat as "nominal"—an allegedly "stateless" **nonparty**, at least

8   so long as doing so does not deprive the plaintiff LLC of diverse state citizenships under

9   *Johnson*.  *See, e.g. FDIC v. Lindquist v. Vennum*, 702 F.Supp. 749, 750-51 (D. Minn. 1989)

10  (FDIC's citizenship could be ignored for diversity jurisdiction purposes); *see also, Kuntz v.*

11  *Lamar Corporation*, 385 F.3d 1177 (9th Cir. 2004) (electric cooperative, and not the

12  cooperative's individual members, was real party in interest for diversity jurisdiction purposes).

13      Thus, the Court is not deprived of diversity jurisdiction here because, unlike *Swiger* and

14  *ISI International*, the FDIC is a federally-chartered corporation that has its principal place of

15  business in the District of Columbia and is **not** a party to this action, while plaintiff is a LLC that

16  **is** a citizen of the states of Florida and Delaware under *Johnson*, giving the Court diversity

17  jurisdiction of this action.

18      **3.**    **The Court Should Disregard the FDIC for Purposes of Diversity**

19      Nevada and other federal courts have carved out exceptions in various circumstances for

20  the citizenship of parties. *See Roskind v. Emigh,* 2007 WL 981725, *2-3 (D. Nev. April 2, 2007)

21  (citizenship of limited liability company was not considered for diversity where it was a nominal

22  party only present in the lawsuit to allow members to effectuate relief sought in connection with

23  the dissolution and distribution of the company's assets); *Mallia v. Painewebber, Inc.*, 889

24  F.Supp. 277, 283 (S.D. Tex. 1995) (citizenship of limited partnerships disregarded for diversity

25  when partners' claims of securities fraud were not a derivative lawsuit but were directly against

26  the general partners).

27      It is well-established that federal jurisdiction is not ousted by nominal parties. Nominal

28  parties are parties who are present in the litigation for technical reasons but who do not otherwise

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

13

have a significant interest in the litigation. When analyzing complete diversity, courts ignore the citizenship of nominal parties for diversity jurisdiction purposes. *See, e.g., Roskind.* So, as in this case, when an LLC is composed of an LLC, which is composed of a private party LLC and the FDIC—all of which are indisputably *not* citizens of the same state as any Defendant—considering the citizenship of a federal agency such as the FDIC (*see* 28 U.S.C. § 1345 and 12 U.S.C. §1819(b)(1)) in the analysis of complete diversity is the equivalent of including the citizenship of a nominal party, particularly in light of the fact that the FDIC is a non-managing member of an up-stream LLC in the plaintiff's hierarchy and the FDIC is the one party where Congress has clearly expressed its current intent to open the federal courts where its interests are at stake.

Additionally, the FDIC's citizenship has been ignored when determining diversity jurisdiction where the FDIC was ***the plaintiff*** bringing the case, therefore the district court can ignore the FDIC's citizenship as a member of Multibank here, since it is not even a party to the action. *See FDIC v. Linquist & Vennum*, 702 F.Supp. 749, 750-51 (D. Minn. 1989) (holding, when acting as receiver, the FDIC's citizenship can be ignored for purposes of diversity jurisdiction); *see also FDIC v. Elefant*, 790 F.2d 661, 666 (7th Cir. 1986) (stating in dicta that there is no reason to think that Congress demanded that the claims properly in federal court ***without regard to the*** *FDIC* be sent to state courts). Indeed, nothing in 28 U.S.C. 1332(a) prevents this Court from exercising diversity jurisdiction even if it were to find that the FDIC remains a citizen of no state since Plaintiff is a citizen of Delaware and Florida. It makes no sense to use the alleged statelessness of the FDIC to deny jurisdiction when Congress has otherwise made it clear federal jurisdiction over the FDIC in such cases is appropriate.

This Court should disregard the FDIC membership in Multibank for the purposes of determining diversity jurisdiction. Alternatively, if the FDIC is involved in this matter "in any capacity," then the Court has jurisdiction of this action under 28 U.S.C. § 1345 (giving the federal district court original jurisdiction of civil action commenced by agencies of the United States and 12 U.S.C. §1819(b)(1) (now making the FDIC "in any capacity" an agency of the United States for purposes of 12 U.S.C. §1345, without regard to whether the FDIC commenced

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST
LAS VEGAS,
NEVADA 89101
(702) 383-8888

14

1    the action). *Cf. FDIC v. Sweeney*, 136 F.3d 216, 218 (1st Cir. 1998).

2           It is also indisputable that had the FDIC itself brought these same claims as a party,

3    subject matter jurisdiction based on federal question would exist under 12 U.S.C. § 1819(4). *See*

4    *FDIC v. Braemoor Assocs.*, 686 F.2d 550 (7th Cir. 1982), *cert. denied*, 461 U.S. 927, 103 S.Ct.

5    2086, 77 L.Ed.2d 297 (1983) (where the FDIC acquired the loan for value and sues as the

6    creditor, the court had federal question jurisdiction under §1819(4)).  Thus, if the FDIC were the

7    named party instead of a member of the limited liability company that initiated this litigation, the

8    district court would have federal question jurisdiction.  Similarly, if the plaintiff entity were a

9    state chartered corporation of which the FDIC was a shareholder/owner, there would be no

10   question but that the entity jurisdiction of the corporation would apply to determine diversity

11   jurisdiction. The FDIC's status as a federally chartered corporation with an interest in the

12   outcome would be irrelevant to the jurisdictional question.

13          It is illogical to argue this Court lacks subject matter jurisdiction over the same cause of

14   action only in the present scenario, that is, that there is no jurisdiction where the FDIC is a

15   member of an LLC which is a party, but this Court has subject matter jurisdiction when the FDIC

16   is a party itself, or is a shareholder of a corporation which is a party, or "in any capacity" is

17   involved in this action. In every circumstance, the claim is essentially the same. Therefore, the

18   Court has jurisdiction of this matter because: (1) under *Johnson*, the Plaintiff has diverse state

19   citizenships (Delaware and Florida); (2) Congressional intent no longer prevents Plaintiff from

20   invoking diversity jurisdiction based on the FDIC's principal place of business; (3) the FDIC is

21   not a party to this action, hence, the FDIC can be disregarded or treated as "nominal" for

22   diversity jurisdiction purposes; and (4) alternatively, if the FDIC's "in any capacity" is involved

23   in this action, then the Court has federal jurisdiction under 12 U.S.C. § 1819(b)(1) and 28 U.S.C.

24   §1345.

25   **III.    ARGUMENT REGARDING DEFAULT JUDGMENT**

26       **A.     Legal Standard for a Default Judgment**

27          In the event the Court determines it has subject matter jurisdiction, Federal Rule of Civil

28   Procedure 55(b) permits a court, following default by a defendant, to enter default judgment in

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

15

plaintiff's favor. *See Playboy Enters. Int'l, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1038–39 (D. Nev. 2004); *RingCentral, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1057 (N.D. Cal. 2010) ("Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action."). "A failure to make a timely answer to a properly served complaint will justify the entry of a default judgment." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). A district court has discretion to grant relief upon an application for default judgment. *See* Fed. R. Civ. P. 55(b), *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon entry of default, the Complaint's factual allegations regarding liability are taken as true; only the allegations regarding the amount of damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**B.      Plaintiff Is Entitled to a Deficiency Judgment Against Defendant**

NRS 40.455 provides:

> Except as otherwise provided in subsection 3, ***upon application of the judgment creditor*** or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the required hearing, ***the court shall award a deficiency judgment to the judgment creditor*** or the beneficiary of the deed of trust ***if it appears from*** the sheriff's return or the recital of consideration in ***the trustee's deed that there is a deficiency of the proceeds of the sale*** and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

*See* NRS 40.455 (emphasis added).

The Trustee's Deed Upon Sale shows that the Security sold for $190,000.[14] As of December 22, 2011, Defendant owed a total of $635,092.15 under the Loan Documents, which represents the principal and interest due and owing.[15] After offsetting the amount due and owing by $190,000 (the amount for which the Security was sold), Plaintiff is entitled to a deficiency judgment in the amount of $445,092.15.[16]

---

[14] *See* Trustee's Deed Upon Sale.

[15] *See* Strickland Dec.

[16] *See id.*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

16

**C.    Plaintiff Is Entitled to Recover Its Attorney's Fees and Costs of Suit**

Attorneys' fees are recoverable when such an award is authorized by a statute, rule or contractual provision. *Albios v. Horizon Cmtys., Inc.*, 122 Nev. Adv. Rep. 37, 132 P.3d 1022, 1028. Here, Plaintiff is entitled to recover its attorneys fees pursuant to contract (the Note and the Guarantee). The Note and Credit Loan Agreement contain specific provisions allowing Plaintiff to obtain an award for its attorneys' fees and costs.

Specifically, the Note states:

> In the event that suit be brought hereon, or an attorney be employed or expenses be incurred to compel payment of this Note or any portion of the indebtedness evidenced hereby, whether or not any suit, proceeding or anyjudicial or non-judicial foreclosure proceeding be conimenced, ***Borrower promises to pay all such expenses and reasonable attorneys' fees***, including, without limitation, any attorneys' fees incurred in any bankruptcy proceeding.[17]

The Credit Loan Agreement states:

> **E.15    Attorneys' Fees and Costs.** If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, ***the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred*** in that action or proceeding, in addition to any other relief to which he may be entitled.[18]

Accordingly, Plaintiff is now entitled to recover its attorneys' fees and costs of suit because it has been required to bring suit to collect on the Note and Credit Loan Agreement.

To date, Plaintiff has incurred $6,266.73 in attorneys' fees and $1,893.06 in costs in this matter in an attempt to collect the debt owed by Defendant.[19]

---

[17] *See* Note, p. 3 (emphasis added).

[18] *See* Credit Loan Agreement, p. 8 (emphasis added).

[19] *See* Declaration of Todd Kennedy, attached hereto as **Exhibit 3**.

LIONEL SAWYER & COLLINS ATTORNEYS AT LAW 1700 BANK OF AMERICA PLAZA 300 SOUTH FOURTH ST. LAS VEGAS, NEVADA 89101 (702) 383-8888

1

## IV.   CONCLUSION

2      For the foregoing reasons, Plaintiff respectfully requests that the Court (1) determine that

3  it has subject matter jurisdiction; and (2) enter default judgment against Vandenberg 8 in the

4  amount of $453,251.94, together with interest accruing at the statutory rate from the date of entry

5  of the Default Judgment until paid in full.

6                                          LIONEL SAWYER & COLLINS

7

8                                By: /s/ Ketan D. Bhirud
                                      Todd E. Kennedy, Bar No. 6014
9                                     Ketan D. Bhirud, Bar No. 10515

10                                     *Attorneys for Plaintiff*

11

12

13

14

15

16  **IT IS SO ORDERED.**

17
     DATED:  December 23, 20911
18

19

20  _____
     UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888